[Cite as *State v. Cruz*, 2019-Ohio-5239.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,          :

                                No. 108198, 108199, and 108731

v.                                       :

JOSE A. CRUZ,                            :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 19, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-15-597092-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel Van, Assistant Prosecuting Attorney, *for appellee.*

Jonathan N. Garver, *for appellant.*

MARY EILEEN KILBANE, A.J.:

{¶ 1} In this consolidated appeal, defendant-appellant, Jose A. Cruz ("Cruz"), challenges the validity of his guilty plea and the trial court's denial of his

pro se, postsentence motions to withdraw his guilty plea and terminate his sex offender status.[1] For the reasons set forth below, we affirm.

{¶ 2} In July 2015, Cruz was charged in a six-count indictment. Counts 1-3 charged him with rape. Counts 4 and 5 charged him with gross sexual imposition. Count 6 charged him with kidnapping and carried a sexual motivation specification. The indictment listed the victim as Jane Doe (D.O.B. 4/13/01). In February 2016, Cruz entered into a plea agreement with the state. Cruz pled guilty to amended counts of sexual battery (Counts 1 and 3) and an amended count of abduction with the sexual motivation specification (Count 6). The remaining counts were nolled.

{¶ 3} The trial court conducted its sentencing hearing in March 2016. The trial court sentenced Cruz to three years in prison on each count, to be served concurrently, for a total of three years in prison. The court classified Cruz as a Tier III sex offender and informed Cruz of his registration obligations.

{¶ 4} In October 2016, Cruz filed a motion for judicial release, which the state opposed. The trial court denied the motion in November 2016. Two years later, in December 2018, Cruz filed two pro se motions — a motion to withdraw his guilty plea and vacate his conviction and a motion to terminate and/or modify his sex offender classification status. In his motion to withdraw his guilty plea, Cruz argued that defense counsel had promised him judicial release after serving six

---

[1] Case No. 108198 involves the denial of Cruz's postsentence motion to withdraw his guilty plea. Case No. 108199 involves the trial court's denial of Cruz's motion to terminate and/or modify his sex offender classification. Case No. 108731 is a delayed appeal from Cruz's guilty plea.

months in prison. In his motion to terminate his sex offender classification, Cruz argued that the Tier III reporting requirements are excessive punishment in violation of both the U.S. and Ohio Constitutions. The state opposed both motions. The trial court denied both motions in January 2019.

{¶ 5} Cruz now appeals, raising the following four assignments of error for review:

### Assignment of Error No. 1

[Cruz's] guilty plea must be vacated because the trial court erred in failing to adequately inform [Cruz], prior to accepting his guilty pleas, that he had a constitutional right to a trial by jury.

### Assignment of Error No. 2

[Cruz's] guilty plea must be vacated because the trial court erred by failing to ascertain, prior to accepting his guilty plea, that he understood the constitutional rights recited by the trial court and that he further understood that by entering guilty pleas he was waiving those constitutional rights.

### Assignment of Error No. 3

The trial court erred in denying [Cruz's postsentencing] motion to withdraw guilty plea and vacate conviction.

### Assignment of Error No. 4

The trial court erred in denying [Cruz's posttrial] motion to terminate and/or modify his Tier III sex offender/child offender classification status because [R.C.] 2950.1(G)(1)(A) violates the ban on cruel and unusual punishment contained in the Eighth Amendment of the Constitution of the United States.

### Guilty Plea

{¶ 6} In the first and second assignments of error, Cruz challenges his guilty plea. Cruz argues that his plea must be vacated because the trial court did not

adequately inform him of his constitutional right to a jury trial. Cruz also argues that his guilty plea must be vacated because the trial court failed to ascertain, prior to accepting his guilty plea, that he understood his constitutional rights and that he waived those constitutional rights by entering a guilty plea.

{¶ 7} Crim.R. 11(C) sets forth the procedure the trial court must follow before accepting defendant's guilty plea. "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996).

{¶ 8} We review the trial court's compliance with the requirements of Crim.R. 11(C) de novo. *State v. Roberts*, 8th Dist. Cuyahoga No. 89453, 2010-Ohio-3302, ¶ 19, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977).

{¶ 9} Crim.R. 11(C)(2)(c) provides in relevant part:

> In felony cases the court may refuse to accept a plea of guilty * * * and shall not accept a plea of guilty * * * without first addressing the defendant personally and doing all of the following: * * * [i]nforming the defendant and determining that the defendant understands that by the plea[,] the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 10} Strict compliance by the trial court is required for the waiver of the constitutional rights (right to a jury trial) set forth under Crim.R. 11(C)(2)(c). *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18, citing *State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981). In explaining strict compliance, the Ohio Supreme Court has held that "the preferred procedure is for the trial court

to use the language in Crim.R. 11(C), * * * [but the] 'failure to [literally comply] will not necessarily invalidate a plea. The underlying purpose, from the defendant's perspective, of Crim.R. 11(C) is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty.'" *Id.* at ¶ 18, quoting *Ballard* at 479-480.

{¶ 11} Cruz argues that the trial court failed to adequately inform him of his constitutional right to a jury trial. We note that while the advisement on constitutional rights necessitates strict compliance, "[a] rote recitation of the rule is not required." *Ballard.* Indeed, the failure to use the exact language of the rule will not be fatal to the plea as long as the record demonstrates that the trial court explained the rights set forth in Crim.R. 11(C) in a manner reasonably intelligible to that defendant. *Id.* at paragraph two of the syllabus, citing *State v. Caudill*, 48 Ohio St.2d 342, 358 N.E.2d 601 (1976). In reaching this conclusion, the Supreme Court reasoned that "[t]o hold otherwise would be to elevate formalistic litany of constitutional rights over the substance of the dialogue between the trial court and the accused. This is something we are unwilling to do." *Id.*

{¶ 12} A review of the record in the instant case reveals that the trial court did advise Cruz of his constitutional right to a jury trial. During the plea colloquy, Cruz provided his name, his age (62 years old), the fact that he had an associate's degree, that he was not under the influence of any drugs or alcohol, and that he understood the proceedings. Other than the plea offer, Cruz agreed that no threats or promises had been made. Cruz indicated that he was satisfied with counsel. The

trial court then informed Cruz of his constitutional rights. The court advised, in relevant part:

> By entering into a plea, you're waiving, you're giving up, [your] constitutional rights. First of all, you have the right to trial.
>
> * * *
>
> And, [Cruz], in your case, the case would be heard by [the assigned judge] or alone or by a jury of 12 people. At trial, with the assistance of your attorneys, you would be able to confront and cross-examine any witnesses brought against you. You'd be able to subpoena witnesses. You could require people to appear in court and testify for you. You could testify.

(Tr. 10.)

{¶ 13} Based on the foregoing, we find that the trial court explained to Cruz the right to a jury trial in a reasonably intelligible manner, and in strict compliance with Crim.R. 11(C)(2)(c). The court advised Cruz that he had the constitutional right to trial, which could be heard before the judge alone or a jury of 12 people. Given Cruz's age and level of education, it is reasonable to believe he understood that he was waiving the rights associated with a jury trial, and he was also waiving his right to a jury trial. *State v. Truitt*, 10th Dist. Franklin No. 10AP-795, 2011-Ohio-2271, ¶ 14.

{¶ 14} Cruz also argues that his guilty plea must be vacated because the trial court did not ensure he understood that, by pleading guilty, he was waiving the constitutional rights set forth in Crim.R. 11(C)(2). More specifically, Cruz contends the trial court did not ask him after each constitutional right whether he understood the right and whether he knew that he was waiving the right, nor did the trial court,

referring collectively to all of the constitutional rights, ask him whether he understood his constitutional rights and whether he knew that, by entering a guilty plea, he was waiving his constitutional rights. In support of his argument, Cruz relies on two decisions from this court — *State v. Miller*, 8th Dist. Cuyahoga No. 105363, 2018-Ohio-843, *discretionary appeal allowed*, 153 Ohio St.3d 1502, 2018-Ohio-4288, 109 N.E.3d 1259, and *State v. Smith*, 8th Dist. Cuyahoga No. 107956, 2019-Ohio-3769.[2] We find these cases distinguishable.

{¶ 15} In *Miller* and in *Smith*, the trial courts did not explicitly describe a waiver of constitutional rights. Rather, the courts explained the constitutional rights in terms of the rights the defendant maintained upon going to trial instead of notifying the defendant that he was waiving those rights.

{¶ 16} At the plea hearing in *Miller*, the trial court "informed Miller of his constitutional rights, but never expressly stated that by pleading guilty, Miller was waiving those rights. Miller nevertheless pleaded guilty according to the terms of the plea agreement, and the court sentenced him to an aggregate eight-year prison term." *Id.* at ¶ 3. In *Smith*, which relied on *Miller*, the trial court ensured that Smith understood all of his constitutional rights, but it never expressly stated, or inquired as to whether Smith understood, that by pleading guilty, he was waiving his

_____

[2] We recognize that at the time of this appeal, *Miller* is pending before the Ohio Supreme Court with oral argument scheduled for December 11, 2019. However, because *Miller* is distinguishable, we are reviewing this case instead of staying with the proceedings pending the release of the Ohio Supreme Court's decision.

constitutional rights. *Smith* at ¶ 11. During the plea colloquy in *Smith*, the trial court

explained the constitutional rights to Smith as follows:

> [THE COURT]: Even though your lawyer may have discussed your trial rights, it is my duty to explain them to you in open court.
>
> First, you would have a right to a trial by a jury or by a judge without a jury, whichever you prefer.
>
> You would have the right to be represented by a lawyer. If you could not afford one, the Court will appoint one to represent you at no cost.
>
> At trial, the prosecutor would have to produce its witnesses in open court, and you and your attorney would have the right to cross-examine those witnesses.
>
> You could issue subpoenas to compel witnesses to come into court to testify on your own behalf. You could testify if you wish, but you cannot be compelled to testify against yourself, and the prosecutor could not comment on your failure to testify.
>
> You would be presumed innocent until the prosecutor proved your guilt by evidence beyond a reasonable doubt.
>
> Do you understand those rights?
>
> [SMITH]: Yes, sir.
>
> * * *
>
> [THE COURT]: Having said all that, how do you plead to Count 1 as amended, attempted rape, felony of the second degree; Count 2 as amended, child endangering, felony of the third degree?
>
> [SMITH]: Guilty, sir.
>
> [THE COURT]: Let the record reflect [Smith] has pled guilty. The Court accepts that plea, finds it was made knowingly, intelligently, and voluntarily.

*Id* at ¶ 10.

**{¶ 17}** Relying on *Miller*, the *Smith* court could not conclude the use of the words "would have" and "could have" demonstrate that the trial court explained the rights in a manner reasonably intelligible to Smith. *Smith*, 8th Dist. Cuyahoga No. 107956, 2019-Ohio-3769, ¶ 11. As a result, the *Smith* court found that the trial court's failure to strictly comply with the requirements of Crim.R. 11(C)(2)(c), with respect to the waiver of Smith's constitutional rights, rendered his guilty plea invalid. *Id.*, citing *Miller*, 8th Dist. Cuyahoga No. 105363, 2018-Ohio-843; *State v. Lozada*, 8th Dist. Cuyahoga No. 107827, 2019-Ohio-3040.

**{¶ 18}** Whereas in the instant case, the court explicitly advised Cruz that a guilty plea would waive Cruz's constitutional rights. The court stated:

> Gentlemen, I'm sure that both of your attorneys have talked to you about your constitutional rights. I want to talk about those again. By entering into the plea, you're waiving, you're giving up, those constitutional rights. First of all, you have the right to trial.
>
> * * *
>
> And, [Cruz] in your case, the case would be heard by [the assigned judge] or alone or by a jury of 12 people. At trial, with the assistance of your attorneys, you would be able to confront and cross-examine any witnesses brought against you. You'd be able to subpoena witnesses. You could require people to appear in court and testify for you. You could testify.
>
> You could also choose not to testify. And if you chose not to testify, no one could comment on that or use that against you in any way. The burden of proof is on the state. The state is required to prove all the elements of the crimes they've alleged against you, and they must do that to the highest standard of proof used in court, beyond a reasonable doubt.
>
> * * *
>
> Is counsel comfortable that I've complied with Rule 11?

* * *

[DEFENSE COUNSEL]: Yes, your Honor.

* * *

Let the record reflect the court is satisfied that these gentlemen have been informed of their constitutional rights, that they understand the nature of the charges, the effect of a plea and the maximum penalties which could be imposed. The court further finds that each of their pleas will be made knowingly, intelligently and voluntarily.

(Tr. 9-10, 13-14.)

{¶ 19} While the Ohio Supreme Court in *Ballard* has recommended that "the best method of informing a defendant of his constitutional rights is to use the language contained in Crim.R. 11(C), stopping after each right and asking the defendant whether he understands the right and knows that he is waiving it by pleading guilty," *Id.*, 66 Ohio St.2d at 480, 423 N.E.2d 115, "the failure to do so will not necessarily invalidate a plea." *State v. Donaldson*, 8th Dist. Cuyahoga No. 106812, 2018-Ohio-4872, ¶ 10, citing *State v. Holt*, 9th Dist. Summit No. 21835, 2004-Ohio-3252, ¶ 11, citing *Ballard*.

> The purpose of Crim.R. 11(C) "is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty." [*Holt* at ¶ 11], citing *Ballard*. Providing an explanation of the rights that will be forgone upon pleading guilty satisfies the general purpose of Crim.R. 11(C).
>
> The Ohio Supreme Court rejected the proposition of law requiring courts to abide by the model change of plea hearing as discussed in *Ballard*, and so, too, must we.

*Donaldson* at ¶ 10-11.

{¶ 20} Here, unlike *Miller* and *Smith*, the trial court explicitly explained to Cruz that by pleading guilty he would be waiving certain constitutional rights. As to Cruz's contention that the trial court explained the constitutional rights without stopping and asking him if he subjectively understood each right, we note that his "contention is based on an exemplary plea colloquy, not that which is required." *Donaldson* at ¶ 11.

{¶ 21} Therefore, the first and second assignments of error are overruled.

<u>Postsentence Motion to Withdraw Guilty Plea</u>

{¶ 22} In the third assignment of error, Cruz argues that his pro se, postsentence motion to withdraw his guilty plea should have been granted because defense counsel was ineffective.

{¶ 23} The withdrawal of a guilty plea is governed by Crim.R. 32.1, which provides in relevant part: "[a] motion to withdraw a plea of guilty * * * may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶ 24} A Crim.R. 32.1 postsentence motion to withdraw a guilty plea is subject to a manifest injustice standard. *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715 (1992). A "manifest injustice" has been defined as a "clear or openly unjust act," *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998), citing *Webster's Third New International Dictionary* 1164, 1375 (1986),

that is viewed as a "'an extraordinary and fundamental flaw in the plea proceeding.'" *State v. Hamilton*, 8th Dist. Cuyahoga No. 90141, 2008-Ohio-455, ¶ 8, quoting *State v. Lintner*, 7th Dist. Carroll No. 732, 2001 Ohio App. Lexis 4267 (Sept. 21, 2001), and citing *State v. Wheeler*, 2nd Dist. Montgomery No. 18717, 2002-Ohio-284. "Ineffective assistance of counsel can constitute a manifest injustice constituting a withdrawal of a guilty plea." *State v. Montgomery*, 8th Dist. Cuyahoga No. 103398, 2016-Ohio-2943, ¶ 4, citing *State v. Ayesta*, 8th Dist. Cuyahoga No. 101383, 2015-Ohio-1695, ¶ 8, citing *State v. Dalton*, 153 Ohio App.3d 286, 2003-Ohio-3813, 793 N.E.2d 509, ¶ 18 (10th Dist.).

{¶ 25} The defendant seeking withdrawal of the plea bears the burden of establishing the existence of a "manifest injustice." *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of syllabus. A determination of whether that burden is satisfied is within the sound discretion of the trial court, and will not be reversed by an appellate court absent an abuse of that discretion. *State v. Steinke*, 8th Dist. Cuyahoga No. 100345, 2014-Ohio-2059, ¶ 19, citing *State v. Caver*, 8th Dist. Cuyahoga Nos. 90945 and 90946, 2008-Ohio-6155, citing *Smith*. "'The term "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

{¶ 26} In the instant case, Cruz filed for judicial release seven months after the imposition of his sentence. The trial court denied his motion one month later.

More than two years later, in December 2018, and with approximately three months remaining on his sentence, Cruz sought to withdraw his guilty plea. Cruz attached two affidavits in support of his motion. In these affidavits, Cruz expressed his actual innocence and that defense counsel told him he would get judicial release after six months in prison if he accepted the plea offer. He alleged that defense counsel coerced him into pleading guilty and that counsel failed to perform requested duties.

{¶ 27} A review of the record, however, refutes Cruz's allegations. The state explained the plea offer as follows:

> It's my understanding that the defendant will be withdrawing his previously-entered plea of not guilty and entering a plea of guilty to 3 charges. The first would be count 1, an amended count to sexual battery.
>
> * * *
>
> The state would also ask to amend Count 3 to the same charge, sexual battery, again 2907.03 (A)(1), again a felony of the 3rd degree, high tier. And, lastly, count 6, judge, would be amended at this time to an abduction, in violation of 2905.02 (B). That would be a felony of the 3rd degree and it would be low tier.
>
> Judge, it's my understanding that counts 1 and 3 would require Tier III sex offender registration. In light of this plea, judge, the state would make a motion to nolle all remaining counts[.]

(Tr. 7-8.)

{¶ 28} Furthermore, when the trial court asked Cruz whether he was threatened or promised anything to induce his change of plea, other than the plea offer, Cruz responded, "[n]o." Additionally, Cruz did not express any concern with defense counsel's performance during the colloquy. The record demonstrates that Cruz was pleased with defense counsel's performance at the time of the plea. He

stated to the court he was "very satisfied" with defense counsel. Cruz waited until he had approximately three months left in his sentence to express his concern with defense counsel.

{¶ 29} Accordingly, Cruz did not demonstrate that a manifest injustice occurred, and the trial court did not abuse its discretion in denying his postsentence motion to withdraw his plea.

{¶ 30} Therefore, the third assignment of error is overruled.

Motion to Terminate Sex Offender Classification

{¶ 31} In the fourth assignment of error, Cruz argues the onerous registration requirements for Tier III sex offenders violated the constitutional ban against cruel and unusual punishment.

{¶ 32} We summarily reject Cruz's argument that the requirements accompanying his Tier III sex offender classification violate the U.S and Ohio Constitutions' prohibition against cruel and unusual punishment. We have previously addressed this argument and found that the registration requirements do not constitute cruel and unusual punishment. In *State v. Bias*, 8th Dist. Cuyahoga No. 93053, 2010-Ohio-1977, we stated:

> The Ohio Supreme Court has previously addressed the constitutionality of sexual offender classification and registration laws under House Bill 180, Megan's Law, and subsequent amendments. Beginning with *State v. Cook*, 83 Ohio St. 3d 404, 1998-Ohio-291, 700 N.E.2d 570, through *State v. Ferguson*, 120 Ohio St. 3d 7, 2008 Ohio 4824, 896 N.E.2d 110, the Court has not only upheld sex offender registration laws, but supported their retroactive application. The United States Supreme Court has also found that these laws serve an important governmental interest and do not violate constitutional

rights. *Smith v. Doe* (2003), 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164. Appellant argues that the changes to R.C. 2950 that took effect with the passage of the AWA [Adam Walsh Act] changed the nature of the law from civil and remedial to punitive. That argument has been addressed by this court and rejected. *See Gildersleeve v. State*, Cuyahoga App. Nos. 91515, 91519, 91521, 91532, 2009-Ohio-2031, ¶ 26-33. Appellant claims that the AWA requirements constitute multiple punishments for one offense. The U.S. Supreme Court as well as the Ohio Supreme Court have found sex offender registration laws to be civil, remedial measures, not punitive. *Smith*, supra, at 105-106, 123 S.Ct. 1140; *Ferguson*, supra, at ¶ 32-33. Therefore, double jeopardy is not implicated in this case.

Appellant also argues that the registration and reporting requirements constitute cruel and unusual punishment. Again, this court found that the AWA does not impose punishment, but is a civil, remedial measure enacted to protect the public. *Gildersleeve* at ¶ 26-33. *See, also, Spangler v. State*, Lake App. No. 2008-L-062, 2009 Ohio 3178, ¶ 64-67; *State v. Acoff*, Cuyahoga App. No. 92342, 2009 Ohio 6633, ¶ 24 (finding that "the prospective application of the AWA does not violate due process, double jeopardy, or constitute cruel and unusual punishment").

*Id.* at ¶ 6-7.

**{¶ 33}** Accordingly, the fourth assignment of error is overruled.

**{¶ 34}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN A. GALLAGHER, J., CONCUR