[Cite as *State v. Reyes*, 2021-Ohio-3599.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 110126 |
| v. | : | |
| LUIS REYES, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 7, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-638018-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jennifer A. Driscoll, Assistant Prosecuting Attorney, *for appellee.*

Patituce & Associates, L.L.C., Joseph C. Patituce, Megan M. Patituce, and Lauren K. Wazevich, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Luis Reyes ("Reyes"), appeals from his convictions and sentence. He raises the following assignments of error for review:

1. The trial court erred in accepting Mr. Reyes's guilty plea without confirming that he understood the entirety of the Crim.R. 11(C) plea colloquy.

2. Defense counsel's representation fell below a reasonable standard of care when counsel failed to protect Mr. Reyes's constitutional and legal rights.

3. The trial court erred when it accepted Mr. Reyes's guilty plea after improperly instructing on the effect of said plea during the Crim.R. 11 plea colloquy.

4. The trial court erred in sentencing Mr. Reyes to a 16-year term of imprisonment.

{¶ 2} After careful review of the record and relevant case law, we affirm Reyes's convictions and sentence.

## I. Procedural and Factual History

{¶ 3} In May 2019, Reyes was named in a 12-count indictment, charging him with rape in violation of R.C. 2907.02(A)(2), with a sexually violent predator specification and one- and three-year firearm specifications (Count 1); rape in violation of R.C. 2907.02(A)(2), with a sexually violent predator specification and one- and three-year firearm specifications (Count 2); rape in violation of R.C. 2907.02(A)(2), with a sexually violent predator specification and one- and three-year firearm specifications (Count 3); rape in violation of R.C. 2907.02(A)(2), with a sexually violent predator specification and one- and three-year firearm specifications (Count 4); kidnapping in violation of R.C. 2905.01(A)(4), with a sexual motivation specification, a sexually violent predator specification, and one- and three-year firearm specifications (Count 5); having weapons while under

disability in violation of R.C. 2923.13(A)(2), with one- and three-year firearm specifications (Count 6); having weapons while under disability in violation of R.C. 2923.13(A)(2), with one- and three-year firearm specifications (Count 7); rape in violation of R.C. 2907.02(A)(2), with a sexually violent predator specification and one- and three-year firearm specifications (Count 8); rape in violation of R.C. 2907.02(A)(2), with a sexually violent predator specification and one- and three-year firearm specifications (Count 9); kidnapping in violation of R.C. 2905.01(A)(4), with a sexually violent predator specification and one- and three-year firearm specifications (Count 10); having weapons while under disability in violation of R.C. 2923.13(A)(2), with one- and three-year firearm specifications (Count 11); and having weapons while under disability in violation of R.C. 2923.13(A)(2), with one- and three-year firearm specifications (Count 12). The indictment stemmed from allegations that Reyes separately raped the victims, Jane Doe I and Jane Doe II.

{¶ 4} In September 2020, Reyes appeared before the trial court and expressed that he wished to withdraw his previously entered plea of not guilty and accept the terms of a negotiated plea agreement with the state. Following a Crim.R. 11 colloquy, Reyes pleaded guilty to two counts of rape, with one-year firearm specifications, as amended in Counts 1 and 8 of the indictment; one count of rape, as amended in Count 2 of the indictment; and two counts of abduction, as amended in Counts 5 and 10 of the indictment. In exchange for his guilty pleas, the state reduced the kidnapping offenses to the lesser offense of abduction, and dismissed Counts 3, 4, 6, 7, 9, 11, and 12 of the indictment. In addition, the state deleted the

three-year firearm specifications previously attached to Counts 1 and 8 of the indictment; the one- and three- year firearm specifications previously attached to Count 2, 5, and 10 of the indictment; the sexually violent predator specifications previously attached to Counts 1, 2, 5, 8, and 10 of the indictment; and the sexual motivation specification previously attached to Count 5 of the indictment. The trial court accepted Reyes's guilty pleas and referred him to the county probation department for the completion of a presentence investigation and report (the "PSI").

{¶ 5} As set forth in Reyes's PSI, Jane Doe II alleged that on October 1, 2016, she was walking to a store when a man driving a white SUV pulled up beside her and suddenly attacked her. The male then drove Jane Doe II to an alley where he orally and vaginally raped her at gunpoint. Jane Doe II was subsequently transported to a local hospital and a rape kit was collected. Reyes was later linked to the incident after samples taken from the rape kit were entered into the Ohio Combined DNA Index System.

{¶ 6} Jane Doe I alleged that on February 4, 2018, she was walking home when a man in a white SUV approached her at gunpoint. The man forced Jane Doe I into his vehicle and drove to a nearby alleyway. The man then digitally penetrated Jane Doe I and forced her to have vaginal and oral intercourse. After the incident, Jane Doe I contacted 911 and was taken to the hospital. A rape kit was completed, and Reyes's DNA was discovered in the vaginal and anal swabs taken from Jane Doe I.

{¶ 7} The matter proceeded to sentencing in November 2020. At sentencing, the court heard statements prepared by one of the victims and members of Reyes's immediate family. The victim described the physical, emotional, and psychological harm Reyes's conduct caused her. She explained that she is "stuck in a depression that no one will ever understand" and has turned to alcohol to "numb [her] feelings." (Tr. 34.) The victim asked that the court not show Reyes mercy, "because that day, February 4th, 2018, he didn't have mercy on me." (Tr. 35.)

{¶ 8} In turn, Reyes's father and wife asked the court for leniency based on Reyes's history of mental health issues and their belief in his innocence. Reyes also spoke on his own behalf. He expressed sympathy for the victim, but maintained his innocence, stating:

> But I never in my life would do anything to rape, to hurt, or to disrespect a female. Sorry for you guys wasting your time. Sorry for your family, but I took these charges out of fear. I didn't take these charges because I did it, because I didn't do it. That's all I have to say, Your Honor.

(Tr. 45-46.)

{¶ 9} Based on Reyes's proclamation of innocence at sentencing, the trial court inquired as to whether Reyes wished to withdraw his plea based on his failure to accept responsibility for the crimes. Following a brief discussion off the record, defense counsel expressed that Reyes wished to proceed with sentencing and "[did] not desire to withdraw his guilty pleas." (Tr. 47.)

{¶ 10} Upon consideration of Reyes's PSI and the statements presented during the sentencing hearing, the trial court sentenced Reyes to a one-year term of

imprisonment on each firearm specification, to run prior and consecutive to seven-year prison terms imposed on Counts 1 and 8. In addition, the court sentenced Reyes to seven years in prison on Count 2, and 36-month prison terms on Counts 5 and 10. The trial court ordered the aggregate eight-year prison terms imposed on Counts 1 and 8 to run consecutively, for an aggregate 16-year prison term. The remaining sentences were ordered to run concurrently.

{¶ 11} Reyes now appeals from his convictions and sentence.

## II. Law and Analysis

### A. Crim.R. 11

{¶ 12} In his first assignment of error, Reyes argues the trial court erred in accepting his guilty plea without confirming that he understood the entirety of the Crim.R. 11(C) plea colloquy. In his third assignment of error, Reyes argues the trial court erred when it accepted his guilty plea despite the court's improper advisement regarding the consequences of his plea pursuant to Crim.R. 11(B)(1) and (C)(2)(b). Because these assigned errors challenge the validity of Reyes's guilty pleas, we address them together.

{¶ 13} The underlying purpose of Crim.R. 11 is to convey certain information to a defendant so that they can make a voluntary and intelligent decision regarding whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). "The standard for reviewing whether the trial court accepted a plea in compliance with Crim.R. 11(C) is a de novo standard of review." *State v. Cardwell*,

8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977).

{¶ 14} In order to ensure that a defendant enters a plea knowingly, intelligently, and voluntarily, a trial court must engage in an oral dialogue with the defendant in accordance with Crim.R. 11(C). *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). Crim.R. 11(C) outlines the trial court's duties in accepting guilty pleas:

> (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 15} "When a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial court proceedings and that he was prejudiced by that error." *State v. Dangler*,

162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 13. "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, quoting *State v. Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). A defendant must establish prejudice "'on the face of the record'" and not solely by virtue of challenging a plea on appeal. *Id.* at ¶ 24, quoting *Hayward v. Summa Health Sys.*, 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶ 26.

{¶ 16} The traditional rule, however, is subject to two limited exceptions. *Id.* at ¶ 14-16. Under these two exceptions, no showing of prejudice is required (1) when a trial court fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c) that a defendant waives by pleading guilty or no contest, and (2) when a trial court has completely failed to comply with a portion of Crim.R. 11(C). *Id.* at ¶ 14-15, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31*; State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22. "Aside from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Dangler* at ¶ 16, citing *Nero* at 108.

{¶ 17} When reviewing a trial court's compliance with Crim.R. 11, the inquiry no longer focuses on strict, substantial, or partial compliance with the rule. *State v. Kauffman*, 8th Dist. Cuyahoga No. 109579, 2021-Ohio-1584, ¶ 12. As the Supreme Court of Ohio recognized in *Dangler*, prior caselaw had "muddled [the] analysis by suggesting different tiers of compliance with the rule" and "those formulations have

served only to unduly complicate what should be a fairly straightforward inquiry."

*Dangler* at ¶ 17.  Thus, the questions to be answered are as follows:

> (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Id.*

{¶ 18} In challenging the validity of his plea, Reyes initially argues that his plea is "constitutionally infirm" because "he was never afforded the opportunity to have a dialogue with the trial court to determine if he understood his [constitutional and nonconstitutional] rights and the waiver of them."  Reyes notes that, before accepting his guilty pleas, the trial court did not orally confirm that he understood the relevant constitutional and nonconstitutional rights he was waiving.

{¶ 19} Reyes further contends that the trial court failed to inform him that the effect of a plea of guilty is a complete admission of guilt pursuant to Crim.R. 11(B)(1) and 11(C)(2)(b).  As previously stated, Crim.R. 11(C)(2)(b) provides that in a felony case, a trial court shall not accept a plea of guilty "without first addressing the defendant personally and * * * [i]nforming the defendant of and determining the defendant understands the effect of the plea of guilty * * *, and that the court, upon acceptance of the plea, may proceed with judgment and sentence."  In turn, Crim.R. 11(B)(1) sets forth the effect of a guilty plea and states that "[t]he plea of guilty is a complete admission of the defendant's guilt."

{¶ 20} The foregoing challenges do not dispute that Reyes was fully informed of the constitutional rights set forth in Crim.R. 11(C)(2)(c) that he would be waiving by pleading guilty. Additionally, the record does not reflect that the court completely failed to comply with a portion of Crim.R. 11(C). Thus, if Reyes can establish that the court did not comply fully with a portion of the rule, he must also demonstrate prejudice on the face of the record. *See Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, at ¶ 23-24.

{¶ 21} After reviewing the record, we find that the record supports the trial court's determination that Reyes's plea was knowingly, intelligently, and voluntarily entered. During the change-of-plea hearing, the trial court confirmed that Reyes's current medications were not affecting his ability to understand the proceedings. The trial court then summarized the terms of the negotiated plea agreement and, in language understandable to the average person, set forth the constitutional trial rights listed in Crim.R. 11(C)(2)(c) that would be waived, such that Reyes could make a voluntary and intelligent decision whether to plead guilty knowing that those constitutional rights would not be exercisable if he did. (Tr. 17.) Additionally, the court reviewed the nature of the charges with Reyes and advised Reyes of the maximum penalties associated with his felony offenses. The court further informed Reyes that he would be classified as a sex offender and subject to a mandatory period of postrelease control. Reyes indicated that he understood that he was before the court to enter into a plea agreement, that no threats or promises were made to induce his plea, and that he was satisfied with his representation.

{¶ 22} Regarding Reyes's contention that the court failed to ensure that he understood the implications of his plea, this court has recognized as follows:

> "Although it is strongly recommended that a trial judge stop after naming each constitutional right and ask if the defendant subjectively understands that right as just explained, the failure to do so will not necessarily invalidate a plea." *State v. Donaldson*, 8th Dist. Cuyahoga No. 106812, 2018-Ohio-4872, ¶ 10, quoting *State v. Holt*, 9th Dist. Summit No. 21835, 2004-Ohio-3252, ¶ 11, citing *Ballard*, 66 Ohio St.2d at 479-480, 423 N.E.2d 115. A plea is not invalidated because the trial judge did not stop and ask the defendant whether he waived each individual right. *State v. Parks*, 8th Dist. Cuyahoga No. 86312, 2006-Ohio-1352, ¶ 11.

*State v. Grayer*, 8th Dist. Cuyahoga No. 107653, 2019-Ohio-3511, ¶ 13. As stated, the purpose of Crim.R. 11 is to convey to the defendant certain information so that he or she can make a voluntary and intelligent decision whether to plead guilty. Thus, "the focus, upon review, is whether the record shows that the trial court explained or referred to the right in a manner reasonably intelligible to that defendant." *Ballard,* 66 Ohio St.2d at 479, 423 N.E.2d 115. "Providing an explanation of the rights that will be forgone upon pleading guilty satisfies the general purpose of Crim.R. 11(C)." *Donaldson,* 8th Dist. Cuyahoga No. 106812, 2018-Ohio-4872, at ¶ 10.

{¶ 23} In this case, Reyes correctly states that the trial court did not ask whether he understood each right as they were explained during the plea colloquy. However, under the totality of the circumstances, we find the trial court explained to Reyes in a reasonably intelligent manner that he would be waiving certain constitutional rights by pleading guilty to the felony offenses. The trial court

prefaced its discussion of the waiver of rights by advising Reyes to notify the court if he did not understand any of the information set forth in the court's Crim.R. 11 colloquy. Reyes did not express any confusion during the plea hearing and pleaded guilty in accordance with the terms of the plea agreement. *See State v. Eggers*, 2d Dist. Clark No. 2011-CA-48, 2013-Ohio-3174, ¶ 16 ("By answering 'guilty,' [defendant] implied that he understood that a guilty plea would waive his rights and that he was pleading guilty."). We reiterate that it is better practice to stop after explaining each right and ask if the defendant subjectively understands that right as just explained. At the very least, the trial court should ensure the defendant's understanding of the relevant rights and associated penalties once at the conclusion of its colloquy. Under these facts, however, we are unable to conclude that the structure of the trial court's plea colloquy invalidated Reyes's guilty pleas. *See State v. Lebron*, 8th Dist. Cuyahoga No. 108825, 2020-Ohio-1507, ¶ 15-17; *State v. Cruz*, 8th Dist. Cuyahoga Nos. 108198, 108199, and 108731, 2019-Ohio-5239, ¶ 19-20. The trial court fully complied with the requirements of Crim.R. 11(C)(2)(c).

{¶ 24} Furthermore, we are unpersuaded by Reyes's argument regarding the court's nonconstitutional advisements. Viewing the court's Crim.R. 11 colloquy in its entirety, it is apparent that Reyes subjectively understood the effect of his plea and his admission of guilt. Although the trial court did not recite the exact language of Crim.R. 11(B)(1), Reyes expressly admitted he was guilty of the rape and abduction offenses. (Tr. 21-22.) Under these circumstances, we find Reyes has failed to satisfy his burden of demonstrating adequate prejudice. Our conclusion is

supported by the absence of a claim of actual innocence *during the plea hearing*. *See State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 19 ("[A] defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt."). Moreover, the record reflects that the court gave Reyes the opportunity to withdraw his plea prior to sentencing, which Reyes declined after having an opportunity to speak with his counsel. Thus, it is evident that Reyes's decision to enter pleas of guilty was predicated on his desire to accept the terms of the state's plea offer, and not his misunderstanding of the rights he was waiving or the effect his guilty pleas would have. In the absence of information in the record to support a conclusion that Reyes would not otherwise have entered his pleas, we find Reyes has failed to demonstrate prejudice.

{¶ 25} Reyes's first and third assignments of error are overruled.

## B. Ineffective Assistance of Counsel

{¶ 26} In his second assignment of error, Reyes argues defense counsel rendered ineffective assistance of counsel by failing to ensure that Reyes understood the rights he was waiving by entering a plea of guilty. Reyes contends that but for counsel's deficient performance, "the outcome of this matter would be different."

{¶ 27} A criminal defendant has the right to effective assistance of counsel at all ""critical stages of a criminal proceeding," including when he or she enters a guilty plea.'" *State v. Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, 129 N.E.3d 404, ¶ 14, quoting *Lee v. United States*, 582 U.S. ___, 137 S.Ct. 1958, 1964, 198

L.Ed.2d 476 (2017), quoting *Lafler v. Cooper*, 566 U.S. 156, 165, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012); *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). As a general matter, to establish ineffective assistance of counsel, a defendant must demonstrate (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 28} In Ohio, every properly licensed attorney is presumed to be competent. *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 35 (8th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Thus, in evaluating counsel's performance on a claim of ineffective assistance of counsel, the court must give great deference to counsel's performance and "indulge a strong presumption" that counsel's performance "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674; *see also State v. Powell*, 2019-Ohio-4345, 134 N.E.3d 1270, ¶ 69 (8th Dist.) ("'A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"), quoting *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69.

{¶ 29} A plea of guilty waives a defendant's right to challenge his or her conviction on all potential issues except for jurisdictional issues and the claim that ineffective assistance of counsel caused the guilty plea to be less than knowing, intelligent, and voluntary. *Montpelier v. Greeno*, 25 Ohio St.3d 170, 495 N.E.2d 581 (1986); *State v. Vihtelic*, 8th Dist. Cuyahoga No. 105381, 2017-Ohio-5818; *State v. Szidik*, 8th Dist. Cuyahoga No. 95644, 2011-Ohio-4093; *State v. Salter*, 8th Dist. Cuyahoga No. 82488, 2003-Ohio-5652; and *State v. May*, 8th Dist. Cuyahoga No. 97354, 2012-Ohio-2766, *reopening disallowed*, 2012-Ohio-5504. Accordingly, where a defendant has entered a guilty plea, the defendant can prevail on an ineffective assistance of counsel claim only by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, he would not have pled guilty to the offenses at issue and would have instead insisted on going to trial. *State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 30 (8th Dist.); *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992).

{¶ 30} Within this assignment of error, Reyes refers to the alleged deficiencies in the structure of the court's plea colloquy, asserting that defense counsel "failed to advocate for his client by not ensuring that Reyes understood his rights when the trial court failed to confirm his understanding." As discussed above, however, Reyes's guilty pleas were knowingly, voluntarily, and intelligently entered following the court's careful explanation of the nature of the charges, the maximum penalties Reyes faced, and the constitutional rights Reyes would waive by entering a plea of guilty. *See Grayer*, 8th Dist. Cuyahoga No. 107653, 2019-Ohio-3511, at ¶ 17

("Because we found the trial court did not err in accepting Grayer's guilty plea, counsel cannot be deemed ineffective for failing to ensure Grayer's constitutional rights were properly explained prior to entering a guilty plea."). On this record, there is nothing to suggest that Reyes would not have entered into the negotiated plea agreement had counsel interjected and required Reyes to verbally confirm that he understood the advisements made by the court prior to his admission of guilt. Accordingly, Reyes has failed to demonstrate that defense counsel rendered ineffective assistance of counsel during the plea proceeding.

{¶ 31} Reyes's second assignment of error is overruled.

### C. Felony Sentence

{¶ 32} In his fourth assignment of error, Reyes argues the trial court erred in sentencing him to a 16-year term of imprisonment. Reyes contends that his sentence is inconsistent with the purposes of felony sentencing.

{¶ 33} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 16. R.C. 2953.08(G)(2) provides that when reviewing felony sentences, a reviewing court may overturn the imposition of consecutive sentences where the court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."

{¶ 34} R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences are (1) necessary to

protect the public from future crime or to punish the offender, (2) that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 35} Conformity with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, which means that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). To this end, a reviewing court must be able to ascertain from the record evidence to support the trial court's findings. *Bonnell* at ¶ 29. "A trial court is not, however, required to state its reasons to support its findings, nor is it required to [recite verbatim] the statutory language, 'provided that the necessary findings can be found in the record and are

incorporated in the sentencing entry.'" *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 176, quoting *Bonnell* at ¶ 37.

{¶ 36} In this case, the trial court made the following findings when imposing consecutive sentences:

> The court finds that a consecutive sentence * * * is necessary to punish the offender, protect the public from future crime, and is not disproportionate to the seriousness of the conduct and the danger posed by the defendant. These are two or more offenses, part of one or more courses of conduct, and the harm caused is so great or unusual that a single prison term would not adequately reflect the seriousness of the conduct.

(Tr. 51-52.)

{¶ 37} On appeal, Reyes does not dispute that the trial court made the necessary findings for imposing consecutive sentences and incorporated its findings into the sentencing journal entry. Furthermore, based on the nature of the criminal conduct involved in this case, we cannot say that the record clearly and convincingly does not support the trial court's findings under R.C. 2929.14(C)(4). Reyes engaged in a pattern of deplorable conduct that not only caused immediate physical harm to his victims, but has caused lasting emotional and psychological harm that continues to impair their well-being. The record further reflects that Reyes has a lengthy criminal history and did not accept responsibility for his conduct. Under these circumstances, we find that the record before this court supports the trial court's R.C. 2929.14(C)(4) findings.

{¶ 38} Nevertheless, Reyes argues the trial court's imposition of consecutive sentences was contrary to "the felony sentencing guidelines," R.C. 2929.11 and

2929.12. According to Reyes, "the factors demonstrating that [his] crimes were of a less serious nature and those indicating he was unlikely to commit future crimes substantially outweighed those indicating the crimes were more severe and he was more likely to reoffend." Thus, Reyes maintains that the court's aggregate prison sentence "was not the minimum sanction calculated to protect the public from future crime and to punish Reyes." After due consideration, we find Reyes's position is not only unsupported by the record but is contrary to the current law in the state of Ohio.

{¶ 39} Pursuant to R.C. 2929.11(A), the three overriding purposes of felony sentencing are "to protect the public from future crime by the offender and others," "to punish the offender," and "to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden of state or local government resources." Additionally, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 40} Furthermore, in imposing a felony sentence, "the court shall consider the factors set forth in [R.C. 2929.12(B) and (C)] relating to the seriousness of the conduct [and] the factors provided in [R.C. 2929.12(D) and (E)] relating to the likelihood of the offender's recidivism * * *." R.C. 2929.12.

**{¶ 41}** A sentence is contrary to law if the sentence falls outside the statutory range for the particular degree of offense or the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11, and the seriousness and recidivism factors set forth in R.C. 2929.12. *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 10, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 13. Unlike R.C. 2929.14(C)(4), governing consecutive sentences, R.C. 2929.11 and 2929.12 are not factfinding statutes. *State v. Wenmoth*, 8th Dist. Cuyahoga No. 103520, 2016-Ohio-5135, ¶ 16.

**{¶ 42}** Although the trial court must consider the principles and purposes of sentencing, as well as any mitigating factors, the court is not required to use particular language nor make specific findings on the record regarding its consideration of those factors. *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31; *State v. Jones*, 8th Dist. Cuyahoga No. 99759, 2014-Ohio-29, ¶ 13. In fact, unless the defendant affirmatively shows otherwise, it is presumed that the trial court considered the relevant sentencing factors under R.C. 2929.11 and 2929.12. *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, ¶ 11. This court has held that a trial court's statement in its sentencing journal entry that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under R.C. 2929.11 and 2929.12. *State v. Paulino*, 8th Dist. Cuyahoga No. 104198, 2017-Ohio-15, ¶ 37.

**{¶ 43}** On appeal, Reyes does not dispute that his sentences were within the permissible statutory ranges for his felony offenses and that the trial court stated

that it considered "all the different various factors" in crafting his sentence. (Tr. 51.) The court also stated in the sentencing journal entry that "[t]he court considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11." Thus, Reyes's individual sentences are not contrary to law. To the extent Reyes argues the imposition of consecutive sentences does not comport with the purposes and principles of felony sentencing, we reiterate that the Ohio Supreme Court has emphasized that R.C. 2929.11 and 2929.12 apply only to individual sentences; while R.C. 2953.08(G)(2)(a) and 2929.14(C) set forth the exclusive means of appellate review of consecutive sentences. *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 16-17. As stated, the trial court complied with the requirements of R.C. 2929.14(C)(4) and made consecutive-sentence findings that are not clearly and convincingly unsupported by the record. Although Reyes appears to dispute the discretion exercised by the trial court in this case, we repeat that "a sentence is not contrary to law merely because [a defendant] disagrees with the way in which the trial court weighed the R.C. 2929.11 and 2929.12 factors and applied these factors in crafting an appropriate sentence." *State v. Solomon*, 8th Dist. Cuyahoga No. 109535, 2021-Ohio-940, ¶ 115, citing *State v. Nelson*, 8th Dist. Cuyahoga No. 106858, 2019-Ohio-530, ¶ 25, citing *State v. Mock*, 8th Dist. Cuyahoga No. 105060, 2017-Ohio-8866, ¶ 21.

{¶ 44} Reyes's fourth assignment of error is overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR